# EXHIBIT JJ

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation,

Plaintiffs,

v.

TIMOTHY HOFFMAN, an individual, and HOFFMAN TACTICAL LLC, a Tennessee limited liability company,

Defendant.

Case No. 1:25-cv-00389-CLC-CHS

**STATEMENT OF INTEREST OF**
**THE UNITED STATES OF AMERICA**

The undersigned attorneys for the United States (the government) appear on behalf of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) pursuant to 28 U.S.C. § 517 to inform the Court of the government's position regarding certain aspects of the preliminary injunction sought by plaintiffs ABC IP, LLC (ABC) and Rare Breed Triggers, Inc. (Rare Breed) in its patent infringement action against defendants Timothy Hoffman and Hoffman Tactical LLC. The government, through the ATF, has a strong interest in promoting the safe use of firearms by the public, and in this particular case, in discouraging unregulated manufacture of forced reset triggers that allegedly infringe Rare Breed's patents.

The government submits this Statement of Interest to provide the Court with the ATF's views on public interest considerations for the four-factor test for a preliminary injunction. We do not take a position on any of the other factors for granting a preliminary injunction or on the

ultimate question of whether the court should exercise its discretion to issue a preliminary injunction.

## I. BACKGROUND

### A. Plaintiffs' Patented Forced Reset Trigger

In this suit, plaintiffs are asserting U.S. Patent No. 12,038,247 (the '247 Patent), U.S. Patent No. 12,031,784 (the '784 Patent), and expired U.S. Patent No. 7,398,723 (the '723 Patent), which are directed to trigger mechanisms and devices that greatly accelerate the rate of fire of semi-automatic firearms, allowing such firearms to approach rates of fire of automatic firearms. For example, the '247 Patent is directed to a device for accelerating the firing sequence of a standard semiautomatic firearm. *See* ECF No. 1-1 at 2:18-5:56. The claimed invention relates to a trigger mechanism that can convert a trigger from a standard semi-automatic firing mode, whereby the user must release and repull the trigger for each shot, to a "forced reset semi-automatic mode," that enables repeated and accelerated firing by having the firearm's action push the trigger forward. Specifically, in the forced reset mode, rear movement of the bolt carrier pivots a "cam lobe" that forces the trigger to the set position, while the "safety selector" in this position does not impede this process. *Id.* at 2:67-3:10; 3:54-64. This mechanism permits firing without manually releasing the trigger before repulling it. *See id.* at 3:8-10; 3:62-64.

The '247 Patent also highlights that its claimed inventions are designed as drop-in replacements made to particularly fit "AR-pattern" semi-automatic weapons, which include the AR-10 and AR-15 rifles as well as a variety of AR-type pistols. *Id.* at 7:14-24. Such weapons could be modified by the claimed inventions by replacing the trigger module by inserting two assembly pins and the safety selector, as opposed to more complicated modifications. *Id.* at 2:23-26; *see also id.* at 1:62-63 (discussing prior art modifications that "require not only a modified fire control mechanism, but also a modified bolt carrier"). The patent further explains that this

advantageously will result in a "three position" trigger mechanism having "safe, standard semi-automatic, and forced reset semi-automatic positions." *Id.* at 2:26-29.

**B. Litigation Involving Classification of Trigger Mechanisms**

The ATF regulates lawful commerce in firearms and administers and enforces federal firearms laws, including the National Firearms Act of 1934 (NFA) and Gun Control Act of 1968 (GCA), as amended. Both the NFA and GCA regulate machineguns. "Machinegun" is defined as:

> [A]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b); 18 U.S.C. § 921(a)(24).

There has been substantial litigation over whether particular accessories that enable semi-automatic rifles to achieve a high rate of fire convert those firearms into "machineguns" for purposes of Federal law. In *Garland v. Cargill*, the Supreme Court held that "a bump stock—an accessory for a semiautomatic rifle that allows the shooter to rapidly reengage the trigger (and therefore achieve a high rate of fire)—" does not "convert[ a] rifle into a 'machinegun.'" 602 U.S. 406, 410 (2024); *cf. Bump-Stock-Type Devices*, 83 Fed. Reg. 66514 (Dec. 26, 2018) (classifying bump stock devices as machineguns).

Post-*Cargill*, lower courts have split over whether two other related accessories—forced reset triggers (FRTs) and wide-open triggers (WOTs)—convert rifles into machineguns. *Compare NAGR v. Garland*, 741 F. Supp. 3d 568 (N.D. Tex. 2024) (holding that FRTs are not machineguns), *United States v. Bruggeman*, No. 2:22-cr-185, ECF No. 84 (S.D. Tex. Jan. 17, 2025) (same), *with United States v. Rare Breed Triggers, LLC*, 690 F. Supp. 3d 51, 123 (E.D.N.Y. 2023) (holding that FRTs are machineguns).

On May 9, 2025, the United States Department of Justice (DOJ) and ATF executed a settlement agreement with Rare Breed that resolved three civil lawsuits. In a press release, DOJ stated that the agreement "avoids the need for . . . continued litigation" and "includes . . . conditions that significantly advance public safety with respect to FRTs, including that Rare Breed will not develop or design FRTs for use in any pistol and will enforce its patents to prevent infringement that could threaten public safety." DOJ, Press Release, *Department of Justice Announces Settlement of Litigation Between the Federal Government and Rare Breed Triggers* (May 16, 2025).[1] Rare Breed further agreed to promote the safe and responsible use of its products.

During the past seven (7) months, plaintiffs filed more than 15 patent suits against alleged infringers of their patents. Plaintiffs allege that many of the defendants are small manufacturers that make black-market and inferior versions of the patented technology.

In this litigation, plaintiffs allege that defendants publicly distributed 3D print files for a "super safety" infringing FRT design. *See* ECF No. 1 ¶¶ 20, 26, 27. Plaintiffs further allege that defendants intentionally distributed the design to allow widespread copying, distribution, experimentation, and sale of the design by the public. *See id*. ¶¶ 31-32.

## II. LEGAL STANDARDS

### A. Patent Protection and Injunctive Relief

The United States Constitution authorizes Congress to "secur[e] for limited Times to . . . Inventors the exclusive Right to their . . . Discoveries" to "promote the Progress of Science and useful Arts." U.S. Const. art. I, § 8, cl. 8. Pursuant to that power, Congress passed the Patent Act, which makes the USPTO responsible for examining and issuing patents to any new, useful, and nonobvious invention. *See* 35 U.S.C. §§ 1, *et seq.* A patent gives the "right to exclude others from

[1] https://www.justice.gov/opa/pr/department-justice-announces-settlement-litigation-between-federal-government-and-rare-breed.

profiting by the patented invention." *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 215 (1980). To obtain a patent, an inventor submits an application describing the proposed patent claims to the USPTO. *See* 35 U.S.C. §§ 111, 112. If the USPTO allows the patent claims to issue after examination, the patent owner generally obtains exclusive rights to the patented invention throughout the United States for twenty years. *See id.* § 154.

The owner of a patent can file a civil action in district court to obtain monetary and injunctive relief against an infringer, *i.e.*, one who "makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271; *see also id.* §§ 281-286. Congress authorized injunctive relief "in accordance with the principles of equity." *Id.* § 283. Under these principles, the Supreme Court held that a patentee must satisfy the traditional four-factor test. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006). For a preliminary injunction, the four-factor test requires a showing of (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm (with no adequate remedy at law); (3) the balance of the hardships is in favor of the party seeking injunction; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). No factor is dispositive, as "the court must balance all factors . . . in the exercise of its sound discretion." *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 847 (Fed. Cir. 2008).

In this balancing, courts must be "particularly cautious when contemplating relief that implicates public interests." *Salazar v. Buono*, 559 U.S. 700, 714 (2010) (citations omitted); *see Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982) (directing courts to "pay particular regard for the public consequences in employing the extraordinary remedy of injunction"); *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (noting the "important role of the 'public interest' in the exercise of equitable discretion"). Thus, the court may often "go much further both

to give and withhold relief in furtherance of the public interest" than it may "when only private interests are involved." *Yakus v. United States*, 321 U.S. 414, 441 (1944).

**B. Statements of Interest**

Section 517 of Title 28 authorizes "any officer of the Department of Justice[] may be sent by the Attorney General to any . . . district to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517. The statute allows the government to file a statement of interest in district court litigation, without time limitation and without requiring leave of the court. *See, e.g.*, *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1317 (S.D. Fla. 2017).

**III. STATEMENT**

The ATF has an interest in limiting the sale and distribution of FRTs. ATF serves as the primary federal regulator of the firearms industry. As part of its mission, ATF seeks to enhance public safety by enforcing laws and regulations related to firearms. Transfer or possession of a machinegun is illegal under federal law. *See* 18 U.S.C. § 922(o); *see also* 26 U.S.C. § 5845(b) (defining a machinegun as a weapon that automatically fires more than one shot by a single function of the trigger). Some entities have created and sold mechanical devices that provide semi-automatic firearms with the capability to fire at a near-automatic rate.

Even though the Supreme Court subsequently held that ATF exceeded its statutory authority by classifying a bump stock as a "machinegun" under 26 U.S.C. § 5845(b), *see Cargill*, 602 U.S. at 410, other devices present more even more difficult questions. The settlement between the United States and Rare Breed resolved litigation on that issue. As part of that settlement, to prevent the use of forced reset triggers in crime, Rare Breed agreed not to design forced reset triggers for handguns, as defined by the Settlement Agreement. Rare Breed also agreed to take all

reasonable efforts to enforce its patents and seek injunctions against any person or entity that manufactures, sells, or distributes any FRT.

The settlement agreement, however, does not bind other potential manufacturers, who have not agreed to the same limitations on the sale and distribution of FRTs. Thus, plaintiffs' patent enforcement actions would support ATF's public safety efforts, if successful in enjoining use of FRTs by third parties. The ATF's interest in limiting use of FRTs is underscored by the allegations in this litigation. Here, plaintiffs allege intentional distribution of infringing 3D print files to encourage widespread copying, distribution, experimentation, and sale of the design by the public. *See* ECF No. 1 ¶¶ 31-32.

Accordingly, in evaluating the four factors for a preliminary injunction, public interest should be weighed heavily in plaintiffs' favor.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

SCOTT BOLDEN
Director

s/Walter W. Brown
WALTER BROWN
Senior Litigation Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0341
E-mail: walter.brown2@usdoj.gov

*Attorneys for the United States*

January 26, 2026