**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |

**JOINT INITIAL MANAGEMENT REPORT**

Pursuant to FRCP Rule 16.1(b), counsel for Plaintiffs and Defendants thus far centralized[1] in this MDL No. 26-md-3176 (collectively, the "Parties") file this Joint Initial Management Report in advance of an Initial Management Conference. The Parties note that there are additional cases with additional defendants that have been filed and are in the process of being centralized in this MDL or in which defendants have not yet appeared.[2] Consistent with Rule 16.1(b) and the Court's August 31, 2026 order, undersigned counsel began conferral by email on September 1, 2026 and first met on September 14, 2026, via videoconference. The parties met again on September 28 and September 30, 2026, via videoconference, and have continued their conferrals via email since then.

---

[1] Defendants provide a chart (Defendants' Exhibit 1 hereto) listing all cases they are aware of that are in this MDL or are likely to be transferred. That exhibit also includes Defendants' preliminary position on which Defendants are Resellers. Defendants provide the chart for the Court's reference and convenience and do not intend to bind any defendant, including to the characterization of a reseller or non-reseller defendant, by virtue of their status in the chart. Defendants reserve all rights.

Plaintiffs object to Exhibit 1 to the extent it characterizes any Defendant as a "Reseller." As Plaintiffs have explained in opposing certain Defendants' motions to stay under the customer-suit exception, Plaintiffs allege that many Defendants labeled by Defendants as "Resellers" do more than resell another Defendant's product. Plaintiffs believe whether a Defendant can or should be considered by the Court to be a "Reseller" should be decided through an objective process, such as the certification process Plaintiffs have proposed herein (*see* Definitions; App. A), under which each Defendant who wishes to must attest to its activities (or lack thereof), sourcing, and whether their unit sales are below a cut-off.

[2] *See* Defendants' Ex. 1.

Unless otherwise noted, the positions set forth below reflect the joint position of undersigned counsel for the Parties. Where undersigned counsel for the Parties could not reach agreement, the current positions of the Parties are set forth separately under the labeled headings. To the extent the Defendants have any different views among themselves, their positions are so indicated in subheadings under "*Defendants' Position*." Counsel for the Parties will be prepared to address these issues during the Initial Management Conference on October 15, 2026.

# TABLE OF CONTENTS


I. DEFINITIONS ........ 1

II. PROPOSED SCHEDULE FOR FUTURE CASE MANAGEMENT CONFERENCES (Fed. R. Civ. P. 16.1(b)(2)(C)) ........ 2

III. APPOINTMENT OF LEADERSHIP COUNSEL ........ 3

IV. PREVIOUSLY ENTERED ORDERS (Fed. R. Civ. P. 16.1(b)(2)(B)) ........ 8

VI. DIRECT FILING OF NEW ACTIONS (Fed. R. Civ. P. 16.1(b)(2)(D)) ........ 9

VII. ADDRESSING RELATED ACTIONS (Fed. R. Civ. P. 16.1(b)(2)(E)): ........ 10

VIII. CONSOLIDATED PLEADINGS (Fed. R. Civ. P. 16.1(b)(3)(A)) ........ 10

IX. EXCHANGE ABOUT FACTUAL BASES FOR CLAIMS AND DEFENSES (Fed. R. Civ. P. 16.1(b)(3)(B)) ........ 13

X. INITIAL DISCLOSURES REQUIRED BY FED. R. CIV. P. 26(A)(1) ........ 13

XI. DISCOVERY ........ 14

XII. EXPERT DISCLOSURES ........ 17

XIII. PRETRIAL MOTIONS (Fed. R. Civ. P. 16.1(b)(3)(D)) ........ 17

XIV. MEASURES TO FACILITATE RESOLUTION (Fed. R. Civ. P. 16.1(b)(3)(E)) ........ 18

XV. REFERRAL OF MATTERS TO U.S. MAGISTRATE JUDGE (Fed. R. Civ. P. 16.1(b)(3)(F)) ........ 18

XVI. PRINCIPAL FACTUAL AND LEGAL ISSUES (Fed. R. Civ. P. 16.1(b)(3)(G)) ........ 18

XVII. ADDITIONAL MATTERS (Fed. R. Civ. P. 16.1(b)(4)) ........ 20

# I. DEFINITIONS

***Plaintiffs' Position:***

For the purposes of this MDL, the following Definitions[3] shall apply:

(a) "Reseller Defendant(s)" means a Defendant (or group of related Defendants) that certifies to the Court that:

i. they have never made (including assembly, modification, or any other manufacturing activity) accused products or any part or component thereof; and

ii. all accused products and/or any part or component thereof they have ever sold, offered for sale, or imported were sourced from another named Defendant in the MDL.

(b) "Sub-2000 Unit Defendant(s)" means a Defendant (or group of related Defendants) that certifies to the Court that:

i. they have never made (including assembly, modification, or any other manufacturing activity) accused products or any part or component thereof;

ii. all accused products and/or any part or component thereof they have ever sold, offered for sale, or imported were sourced from another named Defendant in the MDL; and

iii. they have sold fewer than 2000 total units combined of accused products and/or parts or components thereof.

(c) "Non-Certifying Defendant(s)" means a Defendant (or group of related Defendants) unable or unwilling to make either of these certifications to the Court.

[3] Any Defendant (or group of related Defendants) certifying that they are a "Reseller Defendant" or "Sub-2000 Unit Defendant" must update their certification to the Court within 10 days of any change(s) in circumstances or business activities affecting the accuracy of their prior certification to the Court throughout the pendency of this litigation.

A Defendant (or group of related Defendants) claiming status as a Reseller Defendant or Sub-2000 Unit Defendant must certify that status to the Court using the certification attached as Appendix A to this Report. A Defendant keeps that status only while it continues to meet the applicable definition, through final disposition of this MDL and any related proceedings. A certifying Defendant must update its certification to the Court within 10 days of any change in circumstances or business activities affecting the accuracy of its prior certification. A Defendant that no longer meets the applicable definition loses that status.

***Defendants' Position:***

For the purposes of this MDL, the following Definitions shall apply:

(a) "Reseller Defendant(s)" means a Defendant (or group of related Defendants) that certifies to the Court that all accused products and/or any part or component thereof they have ever sold, offered for sale, or imported were sourced from another named Defendant in the MDL.

(b) "Manufacturers" are non-certifying, non-Reseller Defendants.

## II. PROPOSED SCHEDULE FOR FUTURE CASE MANAGEMENT CONFERENCES (Fed. R. Civ. P. 16.1(b)(2)(C))

The Court has set an initial case management conference for October 15, 2026 (Dkt. 42). The Parties agree that case management conferences every two months would benefit the orderly progress of this MDL, and that such conferences shall be held by telephone or videoconference to reduce costs unless otherwise ordered by the Court. Any Party may request an additional conference, and the Parties defer to the Court's discretion as to whether and when to hold one. Absent good cause or leave of Court, any matter a party intends to raise at a conference shall first be presented to opposing counsel for conferral at least three business days before the conference. Unless otherwise ordered, all substantive communications with the Court outside the ECF system shall be in writing and copied to opposing counsel, except calls to the Court to request a telephonic

hearing on a discovery dispute under the Court's usual procedures. Once Leadership Counsel is appointed, communications concerning matters common to Defendants shall be directed to Defendants' Leadership Counsel, who shall be responsible for distributing them to other Defendants' counsel and pro se defendants; communications concerning a matter specific to a single member action shall also be directed to counsel for the Defendant(s) in that action.

## III. APPOINTMENT OF LEADERSHIP COUNSEL

FRCP 16.1(b)(2)(A) contemplates a leadership counsel.

### i. Timing.

***Plaintiffs' Position:***

Plaintiffs agree that it would be beneficial for the Court to appoint Defendants' leadership counsel as soon as practicable, so that the Parties can begin to effectively and efficiently litigate. Rule 16.1(b)(2)(A)(i) asks for the parties' views on timing now, and the Committee Note observes that appointment of leadership "many times . . . will be one of the early orders the transferee judge enters." Fed. R. Civ. P. 16.1 advisory committee's note (2025). Defendants propose to defer appointment until the pending motions to stay what Defendants characterize as reseller actions are resolved, but they concede that "if the motions to stay are denied, then Leadership Counsel will be needed." Nor is there reason to wait for the remaining transfers, and the Court may supplement leadership appointments at the request of the parties as later-transferred actions arrive.

***Defendants' Position:***

The Court should determine whether to appoint Leadership Counsel and, if so, the structure and operation of Leadership Counsel, only after the Court resolves the pending motions to stay the reseller cases. Roughly three quarters of the cases Plaintiffs filed are against mere resellers of accused products; only a handful of Plaintiffs' cases are against manufacturers.[4] If the 100+ cases

[4] *See* Ex. 1 (preliminarily identifying defendants believed to be Reseller Defendants).

against mere resellers are stayed, then Leadership Counsel will have little, if any, role in this MDL during the stay; if the motions to stay are denied, then Leadership Counsel will be needed. Below, Defendants offer alternative proposals—in the event of a grant or of a denial of a reseller-suit stay.

**ii. Structure.**

***Plaintiffs' Position:***

**Plaintiffs' Leadership Counsel:** Plaintiffs believe that Leadership Counsel need not be appointed for Plaintiffs as there is a single group of two common Plaintiffs across all of the suits (ABC and Rare Breed), together with RBTM LLC, which owns the FRT® marks and is a plaintiff in certain actions asserting trademark and unfair competition claims. As such, Plaintiffs believe that Plaintiffs' counsel can move this case forward in a coordinated and efficient manner without Leadership Counsel. Plaintiffs have provided a service email so that counsel for Plaintiffs can be easily contacted.

**Defendants' Leadership Counsel:** Plaintiffs, while deferring to the Court's preferences on a leadership structure, propose that the Court appoint up to four Leadership Counsel for Defendants.

***Defendants' Position:***

**Plaintiffs' Leadership Counsel:** While Defendants acknowledge that ABC, Rare Breed, and RBTM LLC are common plaintiffs across many or all MDL cases and are represented in all cases by Fish & Richardson, Plaintiffs have other counsel and MDL administration will be facilitated by identifying a principal voice that can speak for Plaintiffs and to which Defendants may raise issues. Moreover, in light of counterclaims adding new counterclaim-defendants, the three Plaintiffs listed here are not the only parties opposing Defendants. As those counterclaim-defendants are added and engage their own counsel, nothing will be lost and efficiencies may be gained by appointing Leadership Counsel for Plaintiffs and counterclaim-defendants.

**Defendants' Leadership Counsel:** *In the event cases against resellers are stayed:* Leadership counsel would not be needed. The manufacturers of accused products—AS Designs (Emerson, Thomson & Bennett); Peak Tactical (Holland & Hart); Atrius (McKool Smith); Hoffman Tactical (Blanchard Horton); and other non-certifying, non-Reseller Defendants (altogether, the "Manufacturers")—will be represented by their appearing counsel.[5]

*In the event the cases against resellers are not stayed:* The Parties agree that the Court appoint four Leadership Counsel for Defendants.

**iii. Selection Procedure.**

The Parties agree that, if Leadership Counsel is appointed for Plaintiffs, Fish & Richardson would serve as Leadership Counsel.

The Parties agree that, if Leadership Counsel is appointed for Defendants, the following four firms may serve as Leadership Counsel for Defendants: (1) Holland & Hart LLP (counsel for Peak Tactical, OpticsPlanet, and other Reseller Defendants); (2) Emerson, Thomson & Bennett (counsel for AS Designs and Reseller Defendants), (3) McKool Smith P.C. (counsel for Atrius Development Group Corporation, Inc. and Reseller Defendants); and (4) Blanchard Horton PLLC (counsel for Hoffman Tactical). Counsel for Peak Tactical, AS Designs, and Atrius will provide representation from three principal accused-product groups (so-called "cartridge" and "safety" or "cam" mechanisms) and from defendants that have represented that they manufacture accused products and a variety of reseller defendants. Further, AS Designs counsel was involved in the origin of the MDL request.

Counsel for Hoffman Tactical should also serve as leadership counsel because the claims and defenses as to Hoffman Tactical and related defendants present certain unique factual and

[5] For these case-management proposals, "Manufacturer suits" includes manufacturer declaratory-judgment actions, including Atrius's two declaratory judgment actions originally filed in the Western District of Texas, Midland Division.

procedural issues—including the entry of a Hoffman-specific preliminary injunction and a pending Federal Circuit appeal—that necessitate separate Leadership Counsel who can effectively address those unique issues with the Court.

**iv. Responsibilities and Authority of Leadership.**[6]

Leadership Counsel should liaise between the respective parties, as well as between the parties and the Court and, where possible, coordinate common briefing on issues where the parties share common positions. This includes coordination, where possible, during pretrial proceedings, fact discovery, expert discovery, and ADR efforts. Leadership shall coordinate common matters, but shall not, without the affected party's express authorization, waive its claims, defenses, privileges, or objections; stipulate to facts, claim constructions, or product equivalence; or settle its claims. Material differences among product groups shall be identified to the Court, with a reasonable opportunity for affected counsel to present separate positions.

The following shall be the responsibilities and authorities of the Leadership Counsel:

(a) Will attend and serve as leads and spokespersons for all Plaintiffs or Defendants during the coordinated pretrial proceedings in response to any inquiries by the Court or opposing counsel.

(b) Will determine (after consultation with other Plaintiffs' or Defendants' counsel, as appropriate) the Plaintiffs' or Defendants' position on all matters arising during pretrial proceedings.

---

[6] The leadership council structure is proposed for administrative convenience but is not intended to narrow the rights of any party. 28 U.S.C. §1407 is a procedural provision allowing for "coordinated or consolidated pretrial proceedings" in a single venue, but "[t]he MDL process does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 62 (3d Cir. 2023) (internal quotation marks omitted). "Cases consolidated for MDL pretrial proceedings ordinarily retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015).

(c) May make or submit any oral or written motions to the Court on behalf of the Plaintiffs or Defendants, as well as oppose, when necessary, any motions involving matters within the Leadership Counsel's sphere of responsibilities (except as to matters specifically directed to individual defendants and their counsel). Notwithstanding the foregoing, counsel and *pro se* parties who are not Leadership Counsel may make or submit oral or written motions to the Court and oppose, when necessary, any motions submitted after conferring with Leadership Counsel.

(d) May negotiate and enter into stipulations on behalf of Plaintiffs and Defendants regarding the litigation, subject to individual Parties' right to opt out of such stipulations.

(e) Will make a good faith effort to coordinate discovery, consistent with the requirements of Fed. R. Civ. P. 26.

(f) Will coordinate, where possible, the retention of expert witnesses and consultants on issues common to Plaintiffs or to Defendants, including claim construction and the validity of the asserted claims, to avoid duplicative expert testimony and to facilitate compliance with the expert limits in the Discovery Order. Nothing in this paragraph limits any Party's right to retain its own experts, or makes Leadership Counsel responsible for the fees of any expert retained by another Party.

(g) Will perform any other task deemed necessary and proper for the Parties' Leadership Counsel to accomplish its responsibilities as defined by the Court's orders.

**v. Proposed methods for communicating and reporting to court and non-leadership counsel.**

Leadership Counsel shall be responsible for disseminating information from the Court to other counsel for that side and *pro se* parties, as appropriate.

Leadership Counsel will file a joint status report at least 10 days before each case management conference to keep the Court and non-leadership counsel informed. Should any additional communication be necessary or appropriate, communication by email should suffice.

**vi. Limits on non-leadership counsel.**

Limits on discovery, including discovery served by or directed to non-leadership counsel, will be governed by the Discovery Order, the ESI Order, and the Protective Order entered in this MDL.

After resolution of any pending pre-answer motions (e.g., under Fed. R. Civ. P. 12(b)), non-leadership counsel must coordinate with that side's leadership counsel before engaging in discovery efforts. Coordination does not require leadership's permission to preserve a deadline, present a distinct defense, or seek relief from the Court after good-faith conferral. Case- or product-specific discovery remains available subject to applicable stays, proportionality, and Court orders.

**vii. Compensation.**

The Parties believe that leadership counsel should be compensated but respectfully request the opportunity to confer about the structure and amount of compensation after leadership counsel is appointed.

## IV. PREVIOUSLY ENTERED ORDERS (Fed. R. Civ. P. 16.1(b)(2)(B))

Any scheduling orders entered by any transferor courts before centralization in this MDL should be vacated. Similarly, any protective orders entered by any transferor courts before centralization in this MDL should be vacated. The vacated orders would be replaced by those entered by this Court.

No orders regarding scheduling or timing of briefing entered by this Court should be vacated simply by operation of the case management conference or this report.

## VI. DIRECT FILING OF NEW ACTIONS (Fed. R. Civ. P. 16.1(b)(2)(D))

The Parties agree that there is no need for a direct filing order at this time and that any tag-along actions should be consolidated with this action by the JPML.

***Plaintiffs' Position:***

Plaintiffs have not represented to the Court that they have completed filing new actions. Rather, Plaintiffs represented that they "have completed filing new actions and do not presently anticipate filing additional complaints in the immediate future." Dkt. 37 at 1. Plaintiffs expect that additional infringers will be identified and that actions against them will be transferred to this MDL through the Judicial Panel's tag-along procedures, and Plaintiffs cannot presently predict the number or timing of such actions. Defendants' proposed November 1, 2026 deadline—set for two weeks after the Initial Management Conference—would arbitrarily insulate any infringer who first appears, or is first identified, after that date. The automatic stay Defendants propose would compound the problem by allowing infringing sales to continue for the duration of the MDL. Neither proposal is necessary: the Parties agree that tag-along actions should be centralized by the JPML in the ordinary course, and that if a newly centralized action arrives at a point where the existing schedule would unduly prejudice the new defendant, the Court can enter a separate schedule for that action. The JPML process, together with the Court's case-by-case scheduling, addresses new actions without a cutoff date. If the Court is nonetheless inclined to set a deadline, Plaintiffs request the opportunity to propose one after the Court rules on the pending motions to stay and after the current transfer process is complete.

***Defendants' Position(s)*:**

Plaintiffs previously represented to the Court that they "have completed filing new actions." In connection with this filing, however, Plaintiffs clarify that they presently expect to file additional actions, and cannot represent that they have filed all actions they are aware of as of this

filing. Instead, Plaintiffs seek an open-ended right to add cases to the MDL, prejudicing the later-added Defendants and removing any burden on Plaintiffs to expeditiously complete filing additional cases and transferring them into the MDL. Accordingly, Defendants propose that the Court set a deadline of November 1, 2026, to file any new cases and notices of tagalong actions for centralization in the MDL. Should Plaintiffs file any cases after that deadline, those cases should be automatically stayed until the resolution of the pending cases in this MDL.

## VII. ADDRESSING RELATED ACTIONS (Fed. R. Civ. P. 16.1(b)(2)(E)):

Two appeals involving related forced-reset-trigger patent litigation are presently pending before the United States Court of Appeals for the Federal Circuit. The first is *ABC IP LLC v. Peak Tactical LLC*, No. 26-1527, which is an appeal from the denial of preliminary injunctive relief in *ABC IP LLC v. Peak Tactical LLC*, No. 2:26-cv-00018-KHR (D. Wyo.), now transferred to this Court as No. 4:26-cv-00698-ALM; the Federal Circuit affirmed on September 15, 2026. The second is *ABC IP, LLC v. Hoffman*, No. 26-1775, an appeal from the preliminary injunction entered in *ABC IP, LLC v. Hoffman*, No. 1:25-cv-00389-CLC-CHS (E.D. Tenn.), now transferred to this Court as No. 4:26-cv-00378-ALM (E.D. Tex.). In addition, there is an ongoing arbitration (*Rare Breed Triggers, Inc. v. Big Daddy Enterprises, Inc., et al.*, JAMS Reference No. 5460002403) between RBT, Big Daddy, Atrius, and other parties. Any report concerning the arbitration shall preserve applicable confidentiality obligations, privileges, and all parties' positions on jurisdiction, arbitrability, and preclusion.

## VIII. CONSOLIDATED PLEADINGS (Fed. R. Civ. P. 16.1(b)(3)(A))

**Docketing.** Papers that apply to all member actions—including the Protective Order, Discovery Order, E-Discovery Order, Order Governing Proceedings, case management reports, and case-wide orders—should be filed in the master docket only and deemed filed in every member

action. Papers that relate to specific member actions shall list the applicable member actions in the caption and shall be filed in the master docket and spread-docketed to each related member action.

A paper filed in the master docket will be deemed filed in each related member action as of the date and time of the master-docket filing, whether or not spread docketing occurs or occurs later.

**Streamlined pleadings.** The parties propose that the Court authorize streamlined complaints and answers as follows.

For complaints, Plaintiffs shall prepare a master complaint together with short-form complaints. The master complaint would set out allegations common across member actions, including, for example: the Patents-in-Suit and the accused product families to which each is asserted, Plaintiffs' ownership and licensing of the Patents-in-Suit and the FRT® marks, the background of Plaintiffs' forced-reset-trigger technology, and the legal theories asserted. Each short-form complaint, together with the master allegations it incorporates by reference, would be the operative complaint in that member action. Because the master complaint would not supersede the individual pleadings, the member actions would retain their separate identities. *See Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 & n.3 (2015).

Each short-form complaint would incorporate the master complaint by reference and set out the allegations specific to that action: the defendant(s), the accused product(s) that defendant makes or sells, the asserted patent(s) and claims, the defendant-specific facts supporting personal jurisdiction and venue, and the defendant-specific facts supporting notice and willfulness. Each defendant would answer or move under Rule 12 in response to the short-form complaint and the incorporated master allegations, so that no defendant's notice of the allegations against it or its Rule 12 defenses is diminished.

After the Court resolves any applicable motions to stay and motions to dismiss, in any unstayed case against a certifying Reseller Defendant, the defendants may enter, if applicable, a general denial for their answer, rather than an allegation-by-allegation answer. With a general denial, each Reseller Defendant will assert its own affirmative defenses and any counterclaims. Plaintiff may, in turn, enter a general denial of such counterclaims.

This structure provides the efficiencies the Committee Note to Rule 16.1(b)(3)(A) describes: consolidated pleadings "may be useful for determining the scope of discovery and may also be employed in connection with pretrial motions, such as motions under Rule 12 or Rule 56." It eliminates the need to amend more than one hundred individual complaints when a common allegation changes—for example, to add a newly issued patent or update the accused product families. Such amendments could be made once, in the master complaint, and any motion practice directed to the common allegations could be briefed once rather than in each member action. It also avoids the time-intensive and costly process of confirming answers to hundreds of parallel allegations asserted against one or more defendants in each of nearly 150 cases.

The complaints and answers that are currently operative in each member action would remain operative. Where a motion for leave to file an amended complaint is pending, the amended complaint would, if leave is granted, become the operative pleading in that action in the form filed with the motion; those pending amendments would not need to be conformed to the master/short-form structure. Only complaints filed after the Court authorizes consolidated pleadings—new complaints in tag-along actions and any further amended complaints in existing member actions—would follow the master/short-form structure. Amended complaints may be answered by general denial.

Plaintiffs propose that the parties meet and confer on the format and contents of the master complaint and short-form complaint and submit an agreed form, or their competing proposals, for

the Court's adoption. Use of consolidated pleadings would not merge the separate member actions or affect any party's rights on remand under 28 U.S.C. § 1407.

## IX. EXCHANGE ABOUT FACTUAL BASES FOR CLAIMS AND DEFENSES (Fed. R. Civ. P. 16.1(b)(3)(B))

The factual bases for the parties' claims and defenses will be disclosed in the pleadings and will be further detailed through the contentions required by the Local Patent Rules.

## X. INITIAL DISCLOSURES REQUIRED BY FED. R. CIV. P. 26(A)(1)

***Plaintiffs' Position:***

Plaintiffs believe that in addition to the initial disclosures required by Fed. R. Civ. P. 26(a)(1), the Court should utilize its ordinary requirements and deadlines for parties to provide their "Mandatory Disclosures"[7] required under the Court's typical Order Governing Proceedings for patent cases, and to provide Additional Disclosures required under the Court's typical Discovery Order for patent cases.

---

[7] "Mandatory Disclosures consist of Initial Disclosures required by Fed. R. Civ. P. 26(a)(1) and the information listed below:

(1) the correct names of the parties to the action;
(2) the name and, if known, address and telephone number of any potential parties to the action;
(3) the name and, if known, the address and telephone number of persons having knowledge of facts relevant to the claim or defense of any party, a brief characterization of their connection to the case and a fair summary of the substance of the information known by such person (may be combined with list of persons required under Rule 26(a)(1)(A) so two list are not needed).
(4) depending upon agreements of the parties or ruling of the court, a copy of, or a description by category and location where each is available for inspection and copying, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party relevant to the claims or defenses of any party. In this regard, the parties might agree to exchange images of documents electronically or by means of computer disk instead of paper; or the parties might agree to review and copy disclosure materials at the offices of the attorneys representing the parties instead of requiring each side to furnish copies of the disclosure materials. Various forms of staggered, or rolling, disclosures might be considered."

***Defendants' Position(s)*:**

Defendants agree that, in cases that are not stayed, Plaintiffs and Manufacturer Defendants should exchange Mandatory Disclosures under the Court's typical Order Governing Proceedings for patent cases, and to provide Additional Disclosures required under the Court's typical Discovery Order for patent cases. However, Defendants believe that the initial disclosures required by Rule 26(a)(1) should not be modified to require additional disclosure for Reseller Defendants. For such Defendants, the burden of such disclosures would disproportionately fall on the scores of Reseller Defendants—including many sole proprietors and very small businesses and their owners—who Plaintiffs have sued.

## XI. DISCOVERY

### a. Protective Order, Discovery Limits, and ESI Protocol

The Parties further submit as Exhibits 2, 3, and 4 respectively a Proposed Protective Order, a Proposed Discovery Order, and a Proposed E-Discovery Order, each reflecting the two sides' positions on any disputed provisions. These draft orders are agreed except where noted in the drafts. The parties' respective positions and arguments with respect to the disputed provisions are addressed below.

***Plaintiffs' Position*:**

Plaintiffs do not object in principle to obtaining common technical discovery concerning a manufacturer's product once, from a manufacturer who is a defendant in this MDL, rather than repeatedly from each defendant that resells the same, unmodified product(s), provided the following is clear. First, the proposal is limited to technical discovery concerning the design and operation of the manufacturer's product as made by the manufacturer; it does not limit, for example, discovery from any defendant concerning modifications to the product or concerning that defendant's own sales, marketing, pricing, inventory, customers, pre-suit knowledge of the Patents-in-Suit, or communications. Second, any defendant that modifies, assembles, combines,

installs, prints, or otherwise makes its own version of an accused product, or that creates its own instructions, videos, or other technical materials, shall produce technical discovery concerning what it did. Third, a manufacturer's one-time production does not relieve any defendant of its obligation to preserve, or to produce on request, technical information concerning modifications to or versions of the accused product that post-date the manufacturer's production. These carve-outs apply whether or not any reseller action is stayed. To aid in the goal of avoiding duplicative discovery, Plaintiffs have also proposed certifications that Defendants can, if possible for them, make to the Court in order to be considered a Reseller Defendant or a Sub-2000 Unit Defendant, as applicable. Subject to those conditions, Plaintiffs are prepared to agree to language implementing Atrius's proposal.

***Defendants' Position(s)*:**

Defendants believe a stay of Reseller Defendant cases will promote efficiency and fairness, as reflected in dozens of pending motions to stay. In the alternative, Defendants believe that phased discovery described in their proposed discovery order would reduce the burden on Reseller Defendants.

Atrius and the Atrius dealers request that common technical discovery be obtained once from the appropriate manufacturer, with dealer-specific discovery, if no reseller stay is granted, limited to nonduplicative information not reasonably available from that source.

**b. Phasing of Discovery**

***Plaintiffs' Position*:**

Plaintiffs oppose phased discovery. Under Defendants' own proposal, phase 1 would not close until October 15, 2027, and phase 2 would run at least nine months more, deferring the completion of fact discovery until mid-2028 at the earliest—in actions in which Plaintiffs allege ongoing infringement and have sought preliminary injunctive relief. That delay falls on Plaintiffs alone.

Phasing also would not produce the efficiencies Defendants claim. Willfulness and remedies overlap substantially with liability: evidence of Defendants' notice and knowledge of the Patents-in-Suit bears on both infringement and willfulness, and sales, pricing, and marketing information bears on offers to sell, inducement, irreparable harm, and damages. Dividing discovery on these issues would require the same custodians to be searched and the same witnesses potentially deposed twice, and would generate disputes over which phase a request belongs to. Sales and pricing records are routine business records, not an unusual burden.

Defendants' premise that phase 2 may never be needed assumes Defendants prevail on infringement or validity as to every accused product. As stated at the September 14 conference, Plaintiffs would be willing to discuss phasing if Defendants agreed to entry of preliminary injunctions for the pendency of the litigation; Defendants have not agreed. Plaintiffs oppose the requested stay of what Defendants have characterized as the reseller actions and will address it in response to Defendants' motions.

***Defendants' Position(s)*:**

As noted elsewhere in this report, Defendants believe that the Court should stay all reseller suits (including any discovery therein) under the customer-suit exception and proceed only with the Manufacturer suits. The stay should cover disclosures, contentions, discovery, and motion deadlines in the stayed cases, subject to preservation duties and further Court order.

For the Manufacturer suits (and for Reseller Defendants if their cases are not stayed), Defendants believe that the Court should phase discovery as follows: phase 1 – discovery necessary for claim construction, infringement, and validity of the asserted patents and trademarks; phase 2 – remedies-related discovery and willfulness. The discovery in phase 1 focuses on common technical issues that will reduce discovery burdens (and impose little, if any, burden on Resellers if their cases are not stayed) before determinations as a matter of law are made after

*Markman* hearings and summary judgment rulings on infringement and invalidity. In contrast, the discovery in phase 2 is party-specific and thus more burdensome. If there is no infringement, or if the patents or asserted marks are invalid, there will be no need to proceed to phase 2 of discovery and incur those costs.

## XII. EXPERT DISCLOSURES

The Parties do not currently anticipate any adjustments to Fed. R. Civ. P 26(a)(2) requirements.

## XIII. PRETRIAL MOTIONS (Fed. R. Civ. P. 16.1(b)(3)(D))

***Plaintiffs' Position*:**

The Plaintiffs' counsel anticipate motions to address case management and discovery issues that arise during the litigation (subject to the Court's ordinary procedures governing the resolution of Discovery Disputes[8]), Federal Rules of Evidence 702 motions concerning experts, motions to strike and/or for summary judgment pursuant to Federal Rule of Civil Procedure 56, and motions in limine. The parties will follow the deadlines for pretrial motions as set forth in the Court's scheduling order.

***Defendants' Position(s)*:**

Defendants agree with the motions listed by Plaintiffs. Aside from the currently pending motions and those noted by Plaintiffs, Defendants currently anticipate motions to dismiss under Rule 12(b) and possible motions to amend counterclaims against Plaintiffs.

---

[8] "**DISCOVERY DISPUTES:** In the event the parties encounter a discovery dispute, no motions to compel may be filed until after the parties fulfill the 'meet and confer' requirement imposed by this Court's Local Rule CV-7(h). If the parties are unable to resolve the dispute without court intervention, the parties must then call the Court's chambers to schedule a telephone conference regarding the subject matter of the dispute prior to filing any motion to compel. After reviewing the dispute, the Court will resolve the dispute, order the parties to file an appropriate motion, or direct the parties to call the discovery hotline.
A magistrate judge is available during business hours to immediately hear discovery disputes and to enforce provisions of the rules. The hotline number is (903) 590-1198. *See* Local Rule CV-26(e)."

## XIV. MEASURES TO FACILITATE RESOLUTION (Fed. R. Civ. P. 16.1(b)(3)(E))

***Plaintiffs' Positions*:**

The Parties have not identified any measures which they currently believe will facilitate resolution of this matter.

***Defendants' Position*:**

Defendants believe that the Court should stay all reseller suits under the customer-suit exception and proceed only with the Manufacturer suits. Upon resolution of the Manufacturer suits, the Reseller suits can be revisited.

## XV. REFERRAL OF MATTERS TO U.S. MAGISTRATE JUDGE (Fed. R. Civ. P. 16.1(b)(3)(F))

At this time, the Parties do not believe it is necessary for the Court to refer any matters to a U.S. Magistrate Judge.

## XVI. PRINCIPAL FACTUAL AND LEGAL ISSUES (Fed. R. Civ. P. 16.1(b)(3)(G))

***Plaintiffs' Statement*:**

### A. Factual Background

These consolidated actions arise from Plaintiffs' patented 'forced reset trigger' ("FRT®") technology. Plaintiff ABC IP, LLC owns the Patents-in-Suit and has exclusively licensed the Patents-in-Suit to Plaintiff Rare Breed Triggers, Inc. to design, manufacture, and sell FRT products. Plaintiffs assert one or more of nine patents across the member actions: U.S. Patent Nos. 12,038,247; 12,031,784; 12,529,538; 12,578,159; 12,636,403; 10,514,223; 11,724,003; 12,036,336; and 12,274,807. The particular patents and claims asserted vary by member action and accused product. The accused products identified thus far generally fall within a limited number of forced-reset trigger product families, including the Super Safety, the ARC-Fire, the Atrius Forced Reset Selector ("FRS"), the Partisan Disruptor, and the Kabuto, together with related kits and components. Certain member actions also assert federal trademark infringement, federal

false designation of origin and unfair competition, and common-law trademark infringement and unfair competition based on Defendants' unauthorized use of "FRT" or confusingly similar designations in connection with firearm triggers. RBTM LLC owns the FRT® marks, and Rare Breed is the exclusive licensee of those marks.

Defendants that include manufacturers, importers, distributors, and resellers of Plaintiffs' patented technology make, use, sell, offer to sell, and/or import competing forced reset trigger products that infringe the Patents-in-Suit, and that are sold at a substantial discount to Plaintiffs' products. The Judicial Panel on Multidistrict Litigation centralized these actions in this District on April 2, 2026, and has since transferred additional actions into the MDL recognizing the MDL's "multi-patent, multi-product" nature and the efficiencies of resolving the parties' common questions consistently in a single forum.

**B. Principal Factual Issues**

The principal factual issues are expected to include, without limitation: (1) the structure, design, and operation of each accused product; (2) whether each accused product meets the limitations of the asserted claims; (3) each Defendant's manufacture, marketing, and/or sale of the accused products; (4) each Defendant's knowledge of the Patents-in-Suit and its conduct following notice, including pre-suit communications, service of the operative complaints, and Defendants' own public acknowledgments of Plaintiffs' patents and products; (5) Defendants' use of "FRT" or confusingly similar designations in connection with the advertising and sale of firearm triggers, including the likelihood of consumer confusion; and (6) the nature and extent of the harm to Plaintiffs, including lost market share, price erosion, and harm to Plaintiffs' goodwill and trademark rights.

### C. Principal Legal Issues

The principal legal issues are expected to include, without limitation: (1) claim construction of the disputed terms of the Patents-in-Suit; (2) whether Defendants directly infringe under 35 U.S.C. § 271(a) and/or indirectly infringe under § 271(b)–(c); (3) whether any infringement is willful; (4) the validity and enforceability of the Patents-in-Suit; (5) Plaintiffs' entitlement to preliminary and permanent injunctive relief; (6) the appropriate measure of damages, including whether this is an exceptional case under 35 U.S.C. § 285; and (7) whether Defendants' use of "FRT" or confusingly similar designations constitutes trademark infringement, false designation of origin, or unfair competition under federal or common law.

***Defendants' Position(s)*:**

In addition to the issues identified by Plaintiffs above, other issues include: (1) whether Plaintiffs unduly delayed in bringing each action and moving for injunctive relief; (2) whether the purported mark FRT is generic; (3) whether Plaintiffs infringe one or more patents held by Defendants, including U.S. Patent No. 9,146,067; (4) whether Plaintiffs' conduct is anticompetitive and in violation of antitrust and monopoly laws; (5) whether Plaintiffs, their counsel, and their privies engaged in, inequitable conduct, perjury, or otherwise came before this Court with unclean hands.

## XVII. ADDITIONAL MATTERS (Fed. R. Civ. P. 16.1(b)(4))

### A. Deadline to Amend Pleadings (including Joining Parties) (Fed. R. Civ. P. 16(b)(3)(A)

***Plaintiffs' Position*:**

Plaintiffs propose that the deadline to amend pleadings and join parties be set in the Court's scheduling order in the ordinary course, keyed to the other case deadlines, rather than fixed now before any schedule exists. The Court's typical practice for setting a deadline to amend pleadings and join parties in patent cases is one week before the due date for filing the parties' Joint Claim

Construction and Prehearing Statement under Patent Rule 4-3. Plaintiffs oppose Defendants' proposed November 1, 2026, cutoff for adding patents. Whether a newly issued patent may be added should be decided under Rule 15 and Rule 16(b) when the request is made.

The Court also should not set Defendants' proposed November 1, 2026, deadline for filing new actions and notices of tag-along actions. The Panel—not a deadline fixed at the outset—decides when transferring new related actions stops serving the purposes of § 1407, and it makes that judgment based on the MDL's actual progress. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Transfer Order at 1 (J.P.M.L. Feb. 5, 2020), ECF No. 140 (transferring tag-along action to MDL centralized in 2008 because "significant efficiency and convenience benefits may yet be achieved through the continued transfer of tag-along actions"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, MDL No. 2843, Order Denying Transfer at 1–2 (J.P.M.L. Apr. 2, 2026), ECF No. 266 (declining further transfers only after nearly eight years of litigation, extensive discovery, and an affirmed class settlement).

***Defendants' Position(s)*:**

Plaintiffs have filed numerous amended complaints (e.g., requesting leave to file a *sixth* amended complaint in No. 4:26-cv-00377 (Dkt. #41)), so Defendants propose setting December 15, 2026, as the deadline to file a motion to amend pleadings. Furthermore, Plaintiffs should be required to commence any new cases that will fall within this MDL, and file notices of tagalong actions for them, no later than November 1, 2026; any cases filed after that date and transferred to this MDL will be stayed until the resolution of the pending cases in this MDL.

**B. Deadline to Complete Discovery (Fed. R. Civ. P. 16(b)(3)(A)**

***Plaintiffs' Position*:**

Plaintiffs oppose phased discovery for the reasons stated above and propose a single deadline for the close of fact discovery, to be set in the Court's scheduling order in the ordinary course. Plaintiffs do not agree to October 15, 2027, or to a further nine-month period thereafter.

Plaintiffs propose that the Court follow its normal practice and provide a basic set of dates, including a trial date for any cases to be tried in this Court. The parties can then confer and present a joint schedule as is the usual practice in this Court.

***Defendants' Position(s)*:**

Defendants propose setting October 15, 2027, as the deadline to complete discovery under phase 1. Once discovery phase 2 opens, Defendants propose that the deadline to complete that phase last for nine months from its opening.

**C. Deadline to File Dispositive Motions (Fed. R. Civ. P. 16(b)(3)(A)**

***Plaintiffs' Position*:**

Plaintiffs propose that the deadline for dispositive motions be set in the Court's scheduling order in the ordinary course, following the close of fact and expert discovery, and not limited to particular issues. Plaintiffs do not agree to December 15, 2027.

***Defendants' Position(s)*:**

Defendants propose December 15, 2027, as the deadline to file dispositive motions on questions of infringement, invalidity, and enforceability of the Patents-in-Suit. This will allow sufficient time after close of phase-1 discovery to finalize any deposition transcripts and resolve any disputes.

### D. Order Focusing Patent Claims and Prior Art to Reduce Costs

***Plaintiffs' Position*:**

Plaintiffs do not object in principle to a focusing order, but any limits, applicability, and timing should not be set now. The Model Order itself provides that "[i]n cases involving several patent families, diverse technologies, disparate claims within a patent, or other unique circumstances, absent agreement of the parties, the court will consider flexibly whether circumstances warrant expanding the limits on asserted claims or prior art references." Model Order Focusing Patent Claims and Prior Art to Reduce Costs, at 1 n.1 (E.D. Tex. Gen. Order 13-20). Plaintiffs propose that the parties confer on appropriate limits and structure, including per-product-family elections, and submit any proposals with the scheduling order.

***Defendants' Position(s)*:**

Effective October 29, 2013 (General Order 13-20), this District adopted a Model Order Focusing Patent Claims and Prior Art to Reduce Costs. Defendants believe that the Court should confirm that this Order applies to the MDL. Reference in the Order to "the patent claimant" shall mean the Plaintiffs collectively, and to "the patent defendant" shall mean all Defendants collectively.

### E. Modification of Local Patent Rules

***Plaintiffs' Position*:**

Plaintiffs do not object in principle to modest modifications of the Local Patent Rules' intervals to account for the number of asserted patents and defendant groups, but the appropriate intervals depend on the overall schedule, which the Court has not yet set. Plaintiffs propose that the Court address any modification of the Local Patent Rules when it enters the scheduling order, after resolution of the pending preliminary-injunction motions. Plaintiffs oppose deferring LPR 3-

7 disclosures to a second discovery phase, for the reasons stated in opposition to phased discovery, and oppose adding a sur-reply brief not provided for in the Rules.

***Defendants' Position(s)*:**

Defendants propose modifying the following requirements set by the Local Patent Rules:

a. LPR 3-3 (Invalidity Contentions) – due 90 days after service of the LPR 3-1 Infringement Contentions;

b. LPR 3-7 (Opinion of Counsel) – due only if discovery proceeds to phase 2 (as discussed above);

c. LPR 4-1(a) (Exchange of Proposed Terms for Construction) – due 30 days after service of the LPR 3-3 Invalidity Contentions;

d. LPR 4-2(a) (Exchange of Preliminary Proposed Claim Constructions) – due 40 days after the LPR 4-1 Exchange of Proposed Terms for Construction;

e. LPR 4-3(a) (Joint Claim Construction and Prehearing Statement) – due 40 days after the LPR 4-2 Exchange of Preliminary Proposed Claim Constructions;

f. LPR 4-4 (Completion of Claim Construction Discovery) – 60 days after service and filing of the LPR 4-3 Joint Claim Construction and Prehearing Statement. The LPR 4-5(a) opening brief should be due 30 days after completion of claim-construction discovery; the remaining briefing and hearing dates should run from that revised deadline.

g. LPR 4-5(b) (Defendants' Claim Construction Briefs) – due 30 days after service of LPR 4-5(a) Plaintiffs' claim construction brief; and

h. LPR 4-5(c) (Defendants' Sur-Reply Claim Construction Briefs) – Not later than 7 days after service upon it of Plaintiffs' reply brief per LPR 4-5(c), each opposing party shall serve and file any sur-reply brief and any evidence directly rebutting the supporting evidence contained in Plaintiffs' reply brief.

DATED: October 5, 2026

Respectfully submitted,

*/s/ Matthew A. Colvin*

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Glenn D. Bellamy *(admitted pro hac vice)*
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
Texas State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

*Attorneys for Plaintiffs*
*ABC IP, LLC and Rare Breed Triggers, Inc.*

ATTORNEYS FOR DEFENDANTS

Signatures included with consent of counsel.

*/s/ Wesley E. Weeks, with consent*
Wesley E. Weeks (Va. Bar No. 86260)
Scott A. Felder
WILEY REIN LLP
2050 M Street N.W.
Washington, DC 20036
Tel: (202) 719-7000
Fax: (202) 719-7049
wweeks@wiley.law

*Attorneys for Defendants*
*Atlantic Firearms LLC and Blaine Bunting*
*EMERSON, THOMSON & BENNETT, LLC*

*/s/ John M. Skeriotis, with consent*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile

*/s/ John Tyler Boyce, with consent*
John Tyler boyce
State Bar No. 24127214
King & Spalding LLP
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone: (713) 276-7324
Facsimile: (713) 751-3290
Email: tboyce@kslaw.com

Attorney for Defendants Argent Wolfz, LLC, Sean Tsao, Carrie Davis Tsao, Josh Jourdan, Cliff Farrington, Steven Thanh Nguyen, Mercier and Sons, LLC, Wayne Mercier, and Samantha Mercier

*/s/ John T. Polasek, with consent*
John T. Polasek
Texas Bar. No. 16088590
ted@polaseklaw.com
THE POLASEK LAW FIRM, PLLC
2401 Fountain View Dr., Suite 316
Houston, Texas 77057
Telephone: (832) 485-3580

*Attorney for Defendants MaRs Trigger LLC & Peter Brennen*

*/s/ Edward K. Chin, with consent*
Robert Manley
Edward K. Chin
Alex Chern
Brandon Merrill
Gregory Saltz
RManley@McKoolSmith.com
EChin@McKoolSmith.com
AChern@McKoolSmith.com
BMerrill@McKoolSmith.com
GSaltz@McKoolSmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000

Ryan B. McBeth
Elliott Clay
RMcBeth@McKoolSmith.com
EClay@McKoolSmith.com
McKool Smith P.C.
600 Travis Street, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300

Steven J. Pollinger
SPollinger@McKoolSmith.com
McKool Smith, P.C.
303 Colorado St., Suite 2100
Austin, TX 75201
Telephone: (512) 692-8700

Adam V. Floyd
AFloyd@FloydIP.com
Floyd IP
3203 Bluffs Lane
Parker, Texas 75002
Telephone: (512) 497-7500

*Counsel for Atrius Development Group Corp., Inc., Malcolm Brown, Grant Shaw, Ryan Spadafore, Mister Guns, LLC, Thomas Carter II, Brandi Carter, PistolCap Limited Company, Mordekhai Harroch, ProSource Firearms, LLC, and Superior Firearms of Texas, LLC*

*/s/ Conor M. Civins, with consent*
Conor M. Civins
Michael Chibib
Conor.Civins@Bracewell.com
Michael.Chibib@Bracewell.com
BRACEWELL LLP
111 Congress Ave., Suite 2300
Austin, TX 78701
Telephone: (512) 472-7800

*Counsel for Cactus Ammo LLC, Grant William Bourne, Eleanor Armory LLC, Nathanial Lee Espy, GrabAGun LLC, Gun Builders Depot LLC, Chad Myers, HK Parts, Inc., Midnight Arsenal Box*

*LLC, Zack Rosenquest, Mister Guns, LLC, Thomas Carter II, Brandi Carter, One Horse, LLC, Jeremy Hammons, Orion Arms Corp., Para Bellum Research Lab LLC, James T. Radke, PistolCap Limited Company, Mordekhai Harroch, ProSource Firearms, LLC, Shalo Tek, Inc., Travis Michael Brewer, Sports South LLC, Superior Firearms of Texas, LLC, WebCorp, Inc., and Thomas Kirgin Jr*

*/s/ Timothy Getzoff, with consent*
Timothy Getzoff
J. Randy Roeser (Tx Bar No. 24089377)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Phone: 303.473.2700
tgetzoff@hollandhart.com
jrroeser@hollandhart.com

Paul Swanson (pro hac vice forthcoming)
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: 303.295.8000
pdswanson@hollandhart.com

*Attorneys for Disruptor Defendants*[1]

[1] Optics Planet, Inc. d/b/a OpticsPlanet; Cloak Industries, Inc.; William C. King Jr.; TGR Services, LLC; TGR Ventures, LP; AR-TT, LLC d/b/a Takedown Tools; Clausen Inc; Jonathan Clausen; Jodi Clausen; SGC, LLC d/b/a Scottsdale Gun Club; Terence D. Schmidt; Ronald Kennedy; Firearm Systems LLC d/b/a Firearm Systems; Brandon Donatto; Michael Stakes; Canuck Tactical LLC d/b/a RangeSport America LLC; Hawkphin Sales, LLC d/b/a Battlehawk Armory/ Battle Optics/ Battle Shop/ Battle Shops/ Lakefront Armory; Adam Gerleman; Antonio Choukair d/b/a Astro Tactical; AR-15 Gun Owners of America, Inc.; Chris Allen Waltz Webcorp, Inc. d/b/a Tactical Shit/ Liberal Tears/ sigglockincolt.com; Thomas Kirgin Jr.; Shooting Targets USA, LLC d/b/a Outpost Gear; Michael Joseph Speeney III; East Coast Cerakote LLC; Gavin Luzier; SKER Industries LLC; Jordan Linsker; David Freshwater d/b/a Idaho Arms & Ammo; Velocity Ammunition Sales, LLC; David Allen Hazlett; Dirty Bird Industries, LLC; Jay Pitcher; Dustin Pitcher; Lori Pitcher; Odin Works, Inc.; Thomas Hines Bilson Arms, LLC; John Angers, Jr.; MGCC Enterprises LLC d/b/a Flip Ammo; 2A Ninja LLC; Ethan Alexander Cook; Combat Armory LLC; Star Development, LLC; Sarah Stokes (Sara Stakes); Muffintop Tactical LLC; Jason Ramsden; Quick Response Firearms LLC; Daniel Corsini; Jerried "Jerry" Brown; Inoculum-Group LLC; Ryan K. Jacobson; 2A Optics LLC; Brian Ingram; Wojtek LLC d/b/a Wojtek Weaponry; Nathan Wolanyk; Barricade, LLC; Kieren (Keiran) Balbag; Firearms Direct Club LLC; Kimberly Smith; and Taylor Spears (collectively, “Disruptor Defendants”).

**Plaintiffs' Proposed APPENDIX A**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |

**CERTIFICATION OF RESELLER OR SUB-2000 UNIT DEFENDANT STATUS**

I, [NAME], declare as follows:

1. I am [TITLE of ENTITY NAME / an individual Defendant in this MDL]. The statements below are based on my personal knowledge or on a reasonable inquiry of the Certifying Defendant's records and personnel. I make this certification on behalf of the following Defendant(s) (the "Certifying Defendant(s)"), and I am authorized to do so:

2. The Certifying Defendant(s) consist of the following named Defendant(s) in this MDL.

(a) [Entity name], Defendant in Case No. [_____];

(b) [Entity name], Defendant in Case No. [_____].

3. Capitalized terms not defined here, including "Reseller Defendant," "Sub-2000 Unit Defendant," and "Non-Certifying Defendant," have the meanings given in the Joint Initial Management Report [ECF No. ___] (the "Report").

4. **Status Claimed.** The Certifying Defendant certifies that it is (check one):

a. **[ ]** a **Reseller**, as defined in the Report.

b. **[ ] a Sub-2000 Unit Defendant**, as defined in the Report.

5. **Manufacturing.** The Certifying Defendant(s) have never made (including assembly, modification, or any other manufacturing activity) accused products or any part or component thereof.

6. **Sourcing.** All accused products and/or any part or component thereof that the Certifying Defendants have ever sold, offered for sale, or imported were sourced from another named Defendant in the MDL, namely: [identify each source Defendant].

7. **Unit Volume (Sub-2000 Unit Defendants only).** The Certifying Defendant(s) have sold fewer than 2,000 total units combined of accused products and/or parts or components thereof.

8. **Continuing Status.** The Certifying Defendant(s) understand that they keep the status certified above only while they continue to meet the applicable definition, through final disposition of this MDL and any related proceedings, and that they lose that status if they no longer meet the definition.

9. **Duty to Update.** The Certifying Defendant(s) will file an updated certification with the Court within ten (10) days of any change in circumstances or business activities affecting the accuracy of this certification, including if they learn that any statement in this certification was inaccurate or incomplete when made.

10. **No Admission.** This certification is not an admission that any product infringes, or a concession about the validity or enforceability of, any asserted patent. It may be used as evidence of the facts certified in it.

[If executed within the United States:] I declare under penalty of perjury that the foregoing is true and correct.

[If executed without the United States:] I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on [DATE] at [CITY, STATE].

______________________________
[NAME]
[TITLE]
On behalf of [ENTITY NAME(S)]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 5, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Matthew A. Colvin*
Matthew A. Colvin