**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |

# JOINT E-DISCOVERY ORDER

The Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1. For purposes of this Order, "RBT" means ABC IP, LLC and Rare Breed Triggers, Inc., collectively, whether asserting infringement claims or defending declaratory-judgment claims. "Reseller Defendant" has the meaning defined by the Court after considering the parties' disputes reflected in the Initial Management Order, subject to and without waiving the Parties' definitional dispute therein. References to a manufacturer include Atrius regardless of its alignment in the pleadings.

2. This Order may be modified in the court's discretion or by agreement of the parties. The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 conference. If the parties cannot resolve their disagreements regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute.

3. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4. Production of Metadata. The parties agree to preserve all metadata for relevant materials, and to collect and provide the following metadata fields, if reasonably available, for each produced document. No party must recreate unavailable metadata. Where a party is not represented by counsel or whose counsel of record does not have prior experience producing documents using a litigation review platform, that party or counsel shall contact counsel for the other Parties to confer regarding potential alternative arrangements. The Parties agree to work in good faith to facilitate production and review in light of any unique circumstances or limitations.

5. Where metadata is produced, the following metadata fields (or substantially identical fields) shall be provided, as applicable:

| | |
|---|---|
| PRODBEGDOC | Bates number of the first page of document. |
| PRODENDDOC | Bates number of the last page of document. |
| PRODBEGATTACH | PRODBEGDOC of the first document in the attachment |
| PRODENDATTACH | PRODENDDOC of the last document in the attachment |
| CUSTODIANS | All production custodians or data sources associated with that file. |
| FILENAME | Name of the file. |
| DOCEXTENSION | File extension of the document. |
| DATECREATED | Date and time the document was created. |
| DATELASTMOD | Date and time the document was last modified. |
| AUTHOR | Document author. |
| FROM | Author of message. |
| TO | Recipients of message. |
| CC | Carbon Copy recipients of message. |
| BCC | Blind Carbon Copy recipients of message. |
| EMAILSUBJECT | Message subject line. |
| DATESENT | Date and time the message was sent. |
| DATERECEIVED | Date and time the message was received. |
| DESIGNATION | Confidentiality level assigned to the document. |
| MD5HASH | Unique MD5 Hash value of the document. |
| TEXTPATH | Relative path to extracted text files. |
| NATIVEPATH | Relative path to native files. |

A standard Concordance DAT (.DAT) file, in UTF-8 format, containing the above metadata fields will be provided for the importing of text, native files, and metadata into a document review database. The .DAT will be delimited with the following characters:

| Value | Character | ASCII Number |
|---|---|---|
| Column | ¶ | 20 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value | ; | 59 |
| Nested Value | \ | 92 |

6. Absent agreement of the parties or further order of this court, the following parameters shall apply to ESI production:

A. **General Document Image Format**. Each electronic document shall be produced in a single-page Tagged Image File Format ("TIFF") where reasonable available, or otherwise in multi-page PDF format. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension. OPT/Concordance Image load file (.opt) load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

B. **Text-Searchable Documents.** No party has an obligation to make its production text-searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall

be produced in the same text-searchable format at no cost to the receiving party.

C. **Footer.** Each document image shall contain a footer with a sequentially ascending production number.

D. **Native Files**. File types that do not render into image format consistently (e.g., spreadsheets, presentations, structured data exports or reports, audio files, videos, computer-aided design (CAD) files, source code) shall be produced in native format unless redactions are needed. A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format. The production of an accompanying conversion to TIFF is not necessary for any document produced in its native format, provided that the document in its native format be accompanied by a slipsheet TIFF marked with the production number.

E. **No Backup Restoration Required**. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

F. **Voicemail, Instant Messages, and Mobile Devices**. The Parties are to preserve all sources of information relevant to these matters including voicemails, instant messages (including but not limited to texts, WhatsApp, Signal, Discord, social media groups and messages, etc.), voicemails, and forum posts. The Parties are not required as part of their general discovery obligations to collect, search, and produce relevant information from these sources. However, on a case-by-case basis, if after first conferring with the opposing Party's counsel to try to reach an agreement regarding the necessity and production of

such information, any Party may apply to the Court requesting the production of such information upon a reasonable showing as to why such sources are expected to contain relevant information that is unlikely to be found via other sources such as emails or electronic documents stored on computers or servers.

G. **Other Sources Not Discoverable.** The following categories of ESI are not discoverable and need not be preserved absent further order for good cause:

1. "deleted," "slack," "fragmented," or "unallocated" data;
2. random access memory (RAM) or other ephemeral data;
3. on-line access data such as temporary internet files, history, cache, cookies, etc.;
4. data in metadata fields that are frequently updated automatically, such as last-opened dates;
5. ESI filtered out by spam and/or virus filtering software, so long as the criteria underlying the filtering are reasonable;
6. server, system, or network logs;
7. system files (e.g., .EXE, .DLL, .SYS, etc.); and
8. other forms of ESI not listed here whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

H. **Databases.** If ESI stored in a database is responsive to a document production request, the producing party may respond by producing a generated report of, or a usable export file with, the responsive ESI and need not produce the entire database.

I. **De-Duplication.** The parties may de-duplicate documents using standard MD5 hashing or SHA-1 methods, applied globally across all custodians. The parties may

discharge their de-duplication obligations and perform e-mail thread deduplication through standard use of commercially available software. De-duplication shall not break apart document families. No document that is the parent or an attachment of a produced document may be withheld as a duplicate.

J. **Parties to Confer in Good Faith**. The Parties agree to confer in good faith about disputes regarding the form of document production, including to resolve issues not addressed by this stipulation.

7. General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this court, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail parties must propound specific e-mail production requests. Communications governed by paragraph 5.F remain subject to its separate provisions and Parties must comply with the provisions of paragraph 5.F in requesting such ESI, information, or other materials.

8. E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, a specific listing of likely e-mail custodians, and a specific identification of up to eight most significant e-mail custodians per side in each case in view of the pleaded claims and defenses[2], infringement contentions and accompanying documents pursuant to P.R. 3-1 and 3-2, invalidity contentions and accompanying documents pursuant to P.R. 3-3 and 3-4, and preliminary information relevant to damages. The exchange of this information shall occur at the time required under the Federal Rules of Civil Procedure, Local Rules, or by order of the court.

9. E-mail production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall limit its e-mail production requests to a total of six custodians

per producing party for all such requests—except that Reseller Defendants in each of their cases need not search more than two custodians, unless otherwise agreed by the parties (e.g., if three co-equal principals operate a Defendant entity). The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

10. Each requesting party shall limit its e-mail production requests to a total of eight search terms per custodian per party. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer search terms per custodian upon a showing of a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. A conjunctive with a narrowing disjunctive combination counts as a single search term (e.g., "computer" and ("system" or "drive"). Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Before full review, the parties shall confer over hit counts, available nonprivileged sampling results, and reasonable burden estimates to narrow disproportionate searches and set issue-specific date ranges. No automatic rolling or

supplemental search is required absent agreement or court order. Nothing in this paragraph excuses supplementation required by Rule
26(e). A search hit alone does not require production of a nonresponsive or privileged document.

11. The parties shall endeavor to produce email attachments sequentially after the parent email and to identify, via metadata, the email attachments as the children of the parent email.

12. Responsive documents in TIFF, PDF, or JPEG format will be stamped with the appropriate confidentiality designation in accordance with the Protective Order in this matter. All material not reduced to documentary, tangible, or physical form or which cannot be conveniently labeled, shall be designated by the producing party by informing the receiving party of the designation in writing. For documents produced in native format, the slipsheet file indicating that the file was produced natively shall contain the confidentiality designation for the native file.

13. Redacted documents and redacted portions of documents shall be made with readily visible redactions (e.g., blackout). The producing party shall retain and preserve a copy of the unredacted data within its possession and control and preserve it without modification, alteration, or addition to the metadata therewith. Redacted documents may include OCR text in lieu of extracted text.

14. Pursuant to Federal Rule of Evidence 502(d), and in accordance with the other orders in this case, e.g. the Discovery Order, the inadvertent production of a privileged or work product protected ESI, information, or other material is not a waiver in the pending case or in any other federal or state proceeding.

15. Nothing in this Order shall require production of ESI, information, or other material that a party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If ESI, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is

inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any party that inadvertently or unintentionally produces ESI, information, or other material that it reasonably believes is protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such ESI, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced ESI, information, or other material. The recipient(s) shall gather and return or delete all copies of such ESI, information, or other material to the producing party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing party.

16. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

17. Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

**IT IS SO ORDERED.**

**SIGNED this 20th day of October, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE