**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |
| ATRIUS DEVELOPMENT GROUP CORPORATION, INC.,<br>Plaintiffs,<br>v.<br>ABC IP, LLC, RARE BREED TRIGGERS, INC., and LAWRENCE DEMONICO,<br>Defendants. | Civil Action Nos. 4:26-cv-00448-ALM |
| ABC IP, LLC, RARE BREED TRIGGERS, INC.,<br>Counterclaim-Plaintiffs,<br>v.<br>ATRIUS DEVELOPMENT GROUP CORPORATION, INC., MALCOLM BROWN, GRANT SHAW, and RYAN SPADAFORE,<br>Counterclaim-Defendants. | Civil Action No. 4:26-cv-00984-ALM |

**COUNTERCLAIM PLAINTIFFS' RESPONSE IN OPPOSITION TO COUNTERCLAIM DEFENDANT GRANT SHAW'S MOTION TO DISMISS AMENDED COUNTERCLAIMS UNDER FED. R. CIV. P. 12(b)(6)**

## INTRODUCTION

Grant Shaw is one of the three directors who run Atrius, the company that makes and sells the accused forced-reset selector. Atrius sued ABC IP and Rare Breed Triggers (together, "Rare Breed") over the very patents at issue here, and the Amended Counterclaims allege that Shaw and his two fellow directors made that decision. Shaw now tells the Court that nothing in the pleading suggests he "knew of any of the asserted patents." (No. 4:26-cv-448, Dkt. 124 ("Mot.") at 6.)

He also says the Amended Counterclaims do not allege that he "appears in the video" Atrius made to promote the accused product. (*Id.* at 2.) Despite this, Atrius and Shaw know that Shaw appeared in the video,[1] using the accused product at the range that he owns in Austin, Texas:




The Amended Counterclaims allege that Shaw took part in Atrius's decisions about how the accused product is designed, made, priced, marketed, and sold, and that he did so knowing of the patents. Under settled Federal Circuit law, a director who does that can be held personally liable for his company's infringement. The Motion should be denied.

[1] Atrius Dev. Grp. & Credova, *Super Semi and Freedom for All*, YouTube, at 2:24 (Dec. 22, 2025), https://www.youtube.com/watch?v=an-fYZZTMEI (cited in No. 4:26-cv-448, Dkt. 112 ("Am. Countercl.") at ¶¶ 50, 54).

## ARGUMENT

### I. THE AMENDED COUNTERCLAIMS STATE A CLAIM AGAINST SHAW FOR DIRECT, CONTRIBUTORY, AND INDUCED INFRINGEMENT

A counterclaim survives a motion to dismiss if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Corporate officers "are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986). The Motion concedes that Paragraph 65 "tracks that standard" (Mot. at 5), and it does not challenge the allegations that Atrius infringes.

The Motion makes three arguments: that Shaw's ownership of property is not infringement, that the remaining allegations against him describe only corporate formalities, and that his knowledge is pleaded only collectively. (Mot. at 2–6.) Each fails. Shaw is liable for the infringement he took part in and for his own use of the accused product (Part I.A); his participation is plausibly pleaded (Part I.B); and so is his knowledge (Part I.C).

#### A. Rare Breed's Claim Is Not That Shaw Owns Property, but That He Took Part in Atrius's Infringement and Used the Accused Product Himself

The Motion's lead argument takes each subsection of § 271 in turn and asks whether owning property where Atrius filmed its promotional video is infringement under it. (Mot. at 2–4.) It is not, and Rare Breed does not contend otherwise. Rare Breed's claim is that Shaw took part in Atrius's infringement, and a director who does that is liable for it, whatever form it takes.

*Orthokinetics* shows how this works. There, three men "held all of STC's directorships and owned all of the stock in STC," and they "were directly responsible for the design and production of the infringing chairs." 806 F.2d at 1579. The Federal Circuit held that this evidence

was "fully sufficient" to make them personally liable "for the direct infringement of STC and Entrón and for STC's contributory infringement." *Id.* Inducement follows the same rule: "corporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under § 271(b) regardless of whether the corporation is the alter ego of the corporate officer." *Id.* at 1578–79. The Amended Counterclaims plead all three forms of infringement by Atrius. Atrius makes, offers, and sells the Atrius Selector. (Am. Countercl. ¶¶ 45, 83, 101, 119, 137.) It sells components of the Selector, such as its cam and lever arm, that are not suitable for substantial noninfringing use. (*Id.* ¶¶ 91, 109, 127, 145.) And it instructs customers to install the Selector in their firearms. (*Id.* ¶¶ 86–89, 104–107, 122–125, 140–143.) *Orthokinetics* rested on a trial record. The question here is only whether Shaw's participation is plausibly pleaded, which Part I.B addresses.

The same rule answers the Motion's argument that no act by Shaw was "directed at any customer or third party." (Mot. at 3.) The first infringer Shaw is alleged to have induced is Atrius itself. In *Water Technologies*, the Federal Circuit affirmed a finding that an individual "intentionally induced Calco's and the public's direct infringement," meaning infringement by both the company that made the accused product and the customers who used it. *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988). An inducer need not deal with customers himself.

Shaw is also a direct infringer in his own right. Using a patented invention is itself an act of infringement. 35 U.S.C. § 271(a). The Amended Counterclaims allege that Brown and Spadafore each used the accused product in Atrius's promotional video. (Am. Countercl. ¶¶ 54, 56.) The Motion stresses that the Amended Counterclaims do not allege that Shaw "used the alleged product." (Mot. at 2.) The video shows (at 2:24) that he did: Shaw fires a rifle equipped

with the Atrius Selector at the range that he owns in Austin to demonstrate the use of the accused product in a promotional video.[2] The Amended Counterclaims cite and rely on that video (Am. Countercl. ¶¶ 50, 54), so the Court may consider it. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts ruling on Rule 12(b)(6) motions consider "documents incorporated into the complaint by reference"). If the Court concludes that the fact must be pleaded, Rare Breed will plead it.

### B. Paragraph 65 Is Not Conclusory, and the Facts the Motion Calls "Corporate Formalities" Make It Plausible

The Motion next argues that the remaining allegations against Shaw "describe corporate status and formalities, not infringement," and that Paragraph 65 is conclusory. (Mot. at 4–5.) Paragraph 65 is not conclusory, and the facts the Motion dismisses as formalities are what make it plausible.

Paragraph 65 alleges what Shaw did. He "participated in and approved Atrius's decisions concerning the design, manufacture, pricing, marketing, and sale of the Atrius Selector." (Am. Countercl. ¶ 65.) He and his fellow directors have been "directing and participating in the offer for sale and sale of the Atrius Selector in Texas." (*Id.* ¶ 24.) And each "personally participated in, directed, authorized, and approved the acts of infringement alleged herein." (*Id.* ¶ 66.) These allegations describe personal participation, which is the conduct *Orthokinetics* makes actionable.

The Motion first overlooks Paragraph 65. It says the inducing conduct is attributed "exclusively to Brown and Spadafore," citing Paragraphs 51 through 64. (Mot. at 3.) Paragraph 65 comes next. When the Motion does reach Paragraph 65, it faults the paragraph for identifying "no decision Shaw made, no meeting he attended, no communication he sent, and no date, product feature, price, or transaction he approved." (*Id.* at 5.) But Rule 8 does not "require heightened

[2] *See supra* note 1.

fact pleading of specifics." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Paragraph 65 names the decisions Shaw took part in (design, manufacture, pricing, marketing, and sale) and the product they concerned. The meetings, dates, and communications through which he took part are known to Shaw and Atrius, not to Rare Breed.

For the same reason, pleading Shaw's role on information and belief is proper. The plausibility standard "does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Both conditions are met here. How Atrius's three directors make decisions about the accused product is known to them, not to Rare Breed. And the belief rests on facts specific to Shaw:

| **Allegation specific to Shaw** | **Am. Countercl.** |
|---|---|
| He is one of Atrius's three directors. | ¶ 7 |
| Atrius uses his condominium as its address and keeps its offices in the same building. | ¶¶ 4–6, 10 |
| He served as Atrius's registered agent. | ¶ 12 |
| He participated in forming three affiliated entities. | ¶¶ 16, 65 |
| He and the other two directors caused Atrius to bring its declaratory-judgment actions. | ¶ 20 |
| He personally helped arrange manufacturers for Atrius. | ¶ 76 |
| Portions of Atrius's promotional video for the accused product were filmed at a gun range he owns. | ¶ 55 |

The Motion takes these facts one at a time and dismisses them as "corporate formalities" that "have nothing to do with infringement." (Mot. at 4.) None of them is offered as an act of infringement. But the Court considers the pleading "in its entirety," *Tellabs*, 551 U.S. at 322, and together these facts describe a director embedded in his company's operations. Atrius has three

directors. It gives one director's home as its address and keeps its offices in his building. That director served as Atrius's registered agent for fourteen months, helped form three affiliated entities when Atrius became a Texas corporation, joined in the decision to sue Rare Breed over these patents, and owns the range where Atrius filmed its promotional video. (Am. Countercl. ¶¶ 12, 16, 20, 55.) It is certainly plausible that a director this involved in Atrius's operations also took part in its decisions about the product it sells.

Shaw also helped arrange Atrius's manufacturing. The Amended Counterclaims allege that he "personally helped arrange manufacturers for Atrius." (Am. Countercl. ¶ 76.) The Motion reads that allegation as limited to the A.R.T. trigger, "a non-accused predecessor product." (Mot. at 5.) But only the paragraph's first sentence concerns the A.R.T. The sentence about Shaw names no product. The next paragraph alleges that McKnight's payments toward the accused product's development and initial manufacturing included "a payment to Atrius's manufacturer." (Am. Countercl. ¶ 77.) The Motion's reading is at most a competing inference, and "[n]othing in *Twombly* or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the nonmovant's asserted inferences plausible." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012). And even on the Motion's reading, Paragraph 76 shows Shaw's personal hand in arranging Atrius's manufacturing, which makes Paragraph 65's allegation about the manufacture of the accused product more plausible, not less.

Nor is Paragraph 66 a "theory of collective responsibility." (Mot. at 5.) *Martinez* recognizes that "referring to a collective group of defendants is not a fatal pleading deficiency," as long as each defendant knows "what he or she did that is asserted to be wrongful." *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021) (per curiam) (internal quotation

marks omitted). Paragraph 66 refers to the three directors together, but it builds on Paragraph 65, which is addressed to Shaw alone and tells him what he is alleged to have done.

**C. Shaw's Knowledge of the Patents Is Pleaded Specifically, Not Collectively**

The Motion's last argument is that the Amended Counterclaims plead knowledge "only collectively." It says they allege no facts suggesting that Shaw "knew of any of the asserted patents, knew that any third party's conduct infringed, or intended to encourage infringement." (Mot. at 6.) Each point overlooks allegations addressed to Shaw.

Inducement requires "knowledge that the induced acts constitute patent infringement." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). The Amended Counterclaims allege that Shaw and his two fellow directors caused Atrius to sue for a declaratory judgment concerning the Counterclaim Patents. (Am. Countercl. ¶¶ 19–20.) A director who causes his company to sue over a patent knows the patent exists. And Atrius's suit seeks a declaration of noninfringement (No. 4:26-cv-00448, D.I. 45 ¶ 2), so the directors who brought it knew that Rare Breed contends the accused product infringes. Paragraph 66 alleges that each director acted "with knowledge of the Counterclaim Patents." The Motion quotes Paragraph 66 but stops before those words. (Mot. at 5.)

The counts tie that knowledge to each patent. The '159 and '403 counts allege knowledge at least from the preparation of Atrius's declaratory-judgment complaints, the second of which was filed on May 26, 2026, the day the '403 Patent issued. (Am. Countercl. ¶¶ 32, 129, 147.) The '247 and '784 counts allege knowledge at least from, among other things, the patent search described in Atrius's public statement on Rare Breed's patent allegations. (*Id.* ¶¶ 93, 111.) The Motion relies instead on Paragraphs 59, 79, and 81, which describe how Atrius, Brown, Spadafore, and the Counterclaim-Defendants as a group came to know of the patents. (Mot. at 6.) That some

allegations describe how others learned of the patents does not suggest that Shaw did not know of them.

Shaw's intent can be inferred from what he approved. "The requisite intent to induce infringement may be inferred from all of the circumstances." *Water Techs.*, 850 F.2d at 669. "[A]dvertising an infringing use or instructing how to engage in an infringing use" shows "an affirmative intent that the product be used to infringe." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005). Atrius does both. Its website directs customers to an installation video and tells them to install the accused product in their firearms. (Am. Countercl. ¶¶ 87–89, 105–107, 123–125, 141–143.) Shaw participated in and approved Atrius's marketing decisions (*id.* ¶ 65), and he appears in its promotional video (Part I.A). Atrius kept selling and promoting the product after Shaw and his fellow directors caused it to sue over the patents, including through a month-long promotion in June and July 2026. (*Id.* ¶¶ 20, 64.) A director who approves that marketing knowing of the patents plausibly intends what it promotes.

The same allegations answer the Motion's contributory-infringement and willfulness arguments. Contributory infringement requires selling a component "knowing the same to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c). For willfulness, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). Shaw knew of the patents no later than when he and his fellow directors caused Atrius to sue over them, and Atrius's sales continued afterward. (Am. Countercl. ¶¶ 20, 64, 93, 111, 129, 147.)

## CONCLUSION

Shaw is one of three directors of the company that makes and sells the accused product. He is alleged to have taken part in Atrius's decisions about that product and, with his fellow directors, to have caused Atrius to sue Rare Breed over the patents it infringes. And he appears in

the video Atrius made to sell it. The Amended Counterclaims state a claim against him, and the Motion should be denied.

Shaw asks that any dismissal be with prejudice, arguing that further amendment would be futile. (Mot. at 6.) Amendment is futile only if "the amended complain[t] would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). The prior amendment responded to a motion, not to a ruling. If the Court finds any part of the pleading insufficient, Rare Breed requests leave to amend under Rule 15(a)(2) to allege, among other things, that Shaw himself used the accused product in the promotional video cited in Paragraphs 50 and 54. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (district courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable").

DATED: October 27, 2026

Respectfully submitted,

*/s/ Oliver J. Richards*
Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
Bret T. Winterle
Texas Bar No. 24084249
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
winterle@fr.com
Tel: (214) 747-5070
Fax: (214) 7472091

Benjamin J. Christoff
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Oliver J. Richards
CA Bar No. 310972
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130
E-mail: ojr@fr.com
Tel: (858) 678-5070
Fax: (858) 678-5099

Glenn D. Bellamy (admitted *pro hac vice*)
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
Texas State Bar No. 24001351

**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

***Attorneys for Counterclaim Plaintiffs ABC IP, LLC, and Rare Breed Triggers, Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 27, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Oliver J. Richards*
Oliver J. Richards