**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| IN RE: RARE BREED TRIGGERS PATENT LITIGATION | CASE NO. 4:26-md-03176-ALM |
| RARE BREED TRIGGERS, INC. et al.,<br>Plaintiffs,<br>vs.<br>DNT LLC d/b/a DEEZ NUTZ TACTICAL et al.,<br>Defendants. | (CASE NO. 4:26-cv-00377-ALM) |
| ABC IP, LLC et al.,<br>Plaintiffs,<br>vs.<br>HARRISON GUNWORKS LLC et al.,<br>Defendants. | (CASE NO. 4:26-cv-00379-ALM) |

**CERTAIN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 17, 2026 ORDERS ON PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND**

DNT LLC d/b/a Deez Nutz Tactical ("DNT"), Zach Morrow, Harrison Gunworks LLC ("Harrison Gunworks"), and Tyler Harrison (together, "Defendants") respectfully oppose Plaintiffs' Motion for Reconsideration of the Court's September 17, 2026 Orders on Plaintiffs' Motions for Leave to Amend (MDL Dkt. #81,[1] "Reconsideration Mot.") insofar as it asks the Court to revisit its orders in these actions (DNT Dkt. #90; Harrison Dkt. #74).

[1] "MDL Dkt." refers to *In re Rare Breed Triggers Patent Litig.*, No. 4:26-md-03176-ALM (E.D. Tex.); "DNT Dkt." refers to *Rare Breed Triggers, Inc. v. DNT LLC*, No. 4:26-cv-00377-ALM

The reasons the Reconsideration Motion should be denied as to these actions can be stated succinctly. On September 17, the Court allowed Plaintiffs to add a newly issued patent in each action and declined to let them add anything else. Plaintiffs now ask the Court to allow three more additions: newly accused products, trademark claims, and a new plaintiff (RBTM LLC) to assert those trademark claims. Each request fails.

*First*, Plaintiffs argue that accused products need not be listed in a complaint and can be added later through infringement contentions. (Reconsideration Mot. 17-18.[2]) If so, there is no need to amend the complaints to add them — let alone through what would be a *sixth* amended complaint in DNT. Serial amendments should not go on indefinitely.

*Second*, this MDL is captioned *In re Rare Breed Triggers* ***Patent*** *Litigation* because it was formed to resolve Plaintiffs' **patent**-infringement claims, not trademark claims. The trademark claims target use of "FRT" — the abbreviation that the Panel, ATF, and Plaintiffs themselves use for the product category. The protectability of Plaintiffs' alleged "FRT" marks can be resolved in the other lawsuits where Plaintiffs have already asserted them.

*Third*, RBTM LLC's only connection to these actions is its claimed ownership of those marks. Without the trademark claims, adding RBTM LLC would be unnecessary and inappropriate.

Nothing has changed since September 17 that warrants a different result. The Reconsideration Motion should be denied as to these actions.

(E.D. Tex.); and "Harrison Dkt." refers to *ABC IP, LLC v. Harrison Gunworks LLC*, No. 4:26-cv-00379-ALM (E.D. Tex.).

[2] Page citations to the record are to the page numbers in the ECF header.

# I. BACKGROUND FACTS

## A. Creation of the MDL

The Judicial Panel on Multidistrict Litigation centralized these actions in this Court on April 2, 2026. *In re Super Safety Pat. Litig.*, 829 F. Supp. 3d 1370 (J.P.M.L. Apr. 2, 2026). The Panel described the proceeding as "patent litigation involv[ing] numerous patents directed at firearm technology known as forced reset triggers (FRTs)," all "owned by plaintiff ABC IP and exclusively licensed by plaintiff Rare Breed Triggers." *Id.* at 1371-72. It found that centralization would "prevent inconsistent pretrial rulings—especially regarding claim construction, patent validity, and the appropriateness of injunctive relief." *Id.* And it renamed the litigation *In re: Rare Breed Triggers* ***Patent*** *Litigation* expressly "to better reflect the substance of the litigation." *Id.* at 1374 (emphasis added). That order nowhere mentions trademark claims.

*DNT* and *Harrison Gunworks* were among the six original actions on which the Panel created this MDL; Plaintiffs sued them in the District of Idaho in 2025. *Id.* at 1375 (Schedule A). In both actions, the transferor court set December 3, 2025, as the deadline to amend pleadings. (DNT Dkt. #21; Harrison Dkt. #21.)

## B. Plaintiffs' Serial Amendments

Plaintiffs have repeatedly amended these complaints. In *DNT*, the latest motion (that was denied in part) requested leave to file a *sixth* amended complaint. (*See* DNT Dkt. #41.) In *Harrison Gunworks*, the latest motion (that was denied in part) asked to file a third amended complaint. (Harrison Dkt. #33.) Both of those motions were filed well after the deadline to amend pleadings.

Each motion sought to add U.S. Patent No. 12,636,403. (*See* Reconsideration Mot. 9.) But Plaintiffs also sought to (1) add RBTM LLC as a new plaintiff in these actions; (2) assert trademark infringement, false designation of origin, and unfair competition claims based on the term "FRT";

and (3) accuse newly identified products — the ARC Fire, Disruptor, and Super Selector against DNT, and the MARC Selector against Harrison Gunworks. (*Id.* at 10, 16-17.) Defendants opposed the amendments. (DNT Dkt. #54; Harrison Dkt. #46.)

### C. The September 17 Orders and Subsequent Proceedings

On September 17, 2026, the Court ruled on fourteen motions for leave to amend. It granted every request to add a patent and denied every request to add anything else, including in these actions. (Reconsideration Mot. 10 & n.2; DNT Dkt. #90; Harrison Dkt. #74.)

At the October 15 Initial Management Conference, Plaintiffs wanted to revisit the September 17 orders (MDL Dkt. #63 at 3) and thereafter filed the Reconsideration Motion.

## II. APPLICABLE LAW

Because the September 17 orders are interlocutory, Fed. R. Civ. P. 54(b) governs. The Court may reconsider and revise its decision for any reason it deems sufficient. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). That discretion runs both ways: Rule 54(b) permits reconsideration; it does not require it. And a court's failure to explain a denial of leave to amend is not error when the reasons are apparent from the record. *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007); *see also* Fed. R. Civ. P. 52(a)(3).

Leave to amend under Rule 15 is not automatic. *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009). Courts may deny leave for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Once a scheduling-order deadline has passed, the movant must first satisfy Rule 16(b)(4) before turning to Rule 15. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). The movant must show "that the deadlines cannot reasonably be met despite the

diligence of the party needing the extension." *Id.* at 535. For motions to amend made after the deadline, courts weigh (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Id.* at 536.

## III. DISCUSSION

### A. Plaintiffs Missed the Deadline to Amend and Have Not Shown Good Cause.

As noted above, the transferor court in *DNT* and *Harrison Gunworks* set December 3, 2025 as the deadline to amend pleadings. Plaintiffs' motions to amend at issue were indisputably filed after that deadline. Rule 16(b)(4) therefore governs.

Plaintiffs' Reconsideration Motion argues that "[n]o such deadline governs these consolidated proceedings." (Reconsideration Mot. 12.) But its footnote concedes that DNT and Harrison Gunworks "carried amendment deadlines in their pre-transfer scheduling orders." (*Id.* at 13 n.3.) While the Court later vacated those scheduling orders (MDL Dkt. #79 at 5), they were in effect during the time when Plaintiff filed its motions to amend and when the Court ruled on them. *See In re Master Key Antitrust Litig.*, 320 F. Supp. 1404, 1407 (J.P.M.L. 1971) (an order entered by the transferor court remains in effect until it is modified by the MDL court). Plaintiffs effectively concede as much by asking the Court to "modify" the deadlines "[t]o the extent any of those deadlines still applies." (Reconsideration Mot. 13 n.3.) Thus, the good-cause standard applied to these motions to amend.

The Reconsideration Motion's good-cause discussion consists of a single footnote. (*Id.*) But "arguments raised in footnotes are not preserved." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-cv-911-JRG, 2016 WL 4440255, at *5 (E.D. Tex. Aug. 23, 2016) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006)). The Reconsideration Motion does not explain when Plaintiffs first discovered the newly accused

products. On the trademark claims, Plaintiffs point to registrations issued in March and April 2026 (Reconsideration Mot. 16), but their Section 43(a) claims under 15 U.S.C. § 1125(a) never depended on registration, and the *Harrison Gunworks* action has accused a device called the "Defender FRT" since before centralization. *In re Super Safety*, 829 F. Supp. 3d at 1373. Plaintiffs failed to explain why they did not bring such claims earlier. Furthermore, by Plaintiffs' own account, the amendments matter little: products can come in through contentions, and the trademark claims are pending in various other actions. (Reconsideration Mot. 15, 17-18.) Thus, the Reconsideration Motion fails to establish that the Court erred when it partially denied those motions to amend.

### B. Under Plaintiffs' Arguments, There Is No Need to Amend the Complaints to Add Newly Accused Products.

The Reconsideration Motion makes the case against its own product amendments. Plaintiffs argue that they need not list accused products in the complaint but may do so in infringement contentions. (*Id.* at 17-18.) If accused products need not be listed in the complaint, there is no need to amend the complaint to list them. Plaintiffs themselves describe the product amendments as merely making "the complaints match what Plaintiffs will accuse," and they promise to identify these products in their infringement contentions regardless. (*Id.* at 8, 17.) Denying a purely conforming amendment costs Plaintiffs nothing, and Rule 54(b) does not call for reconsideration to accomplish nothing. Whether any particular product may properly be accused is a question for the contention process, with Defendants' objections preserved.

The *AS Designs* Order (AS Designs Dkt. #113[3]), Plaintiffs' centerpiece, confirms the point. (Reconsideration Mot. 8, 18.) That order did not address Rule 15 or any motion to amend; it

---

[3] "AS Designs Dkt." refers to *Rare Breed Triggers, Inc. v. AS Designs, LLC*, No. 4:26-cv-00370-ALM (E.D. Tex.).

resolved a motion to strike a motion for temporary restraining order. The Court reasoned that an unpleaded product could be accused because the complaint sought relief for infringement of the Asserted Patents generally and because "the deadline for Plaintiffs to file their infringement contentions has not yet passed." (AS Designs Dkt. #113 at 3-4.) It also noted that once contentions are served, adding a product requires good cause. (*Id.* at 4.) The Court thus treated the contention process — not complaint amendments — as the vehicle for identifying accused products. The AS Designs Order and the September 17 orders are entirely consistent.

There is another reason to leave the September 17 orders in place: these complaints have been amended enough. The proposed pleading in *DNT* would be Plaintiffs' *sixth* amended complaint; in *Harrison Gunworks*, the third. (Reconsideration Mot. 9.) In *DNT* and *Harrison Gunworks*, Plaintiffs moved to amend three times in the first five months of 2026 alone. (*Id.*)

Plaintiffs assure the Court that they "do not intend to keep amending as Defendants release new products." (*Id.* at 17.) But their own justification guarantees more amendments. Plaintiffs say the new products had to be added because "this market moves quickly" and "[m]anufacturers release new models and variants." (*Id.*) If every new model justifies a new complaint, these pleadings will never be settled. Each amendment requires Defendants to answer or move anew and resets the pleadings in actions that, in *DNT* and *Harrison Gunworks*, have been pending since 2025. Leave to amend "is not automatic," *Torch*, 561 F.3d at 391. In these two cases, there have been enough amendments.

**C. <u>The Trademark Claims Need Not Be Added to These Patent Actions</u>.**

This MDL is captioned *In re Rare Breed Triggers* ***<u>Patent</u>*** *Litigation* for a reason. The Panel centralized these actions as "patent litigation" to secure consistent rulings on "claim construction, patent validity, and the appropriateness of injunctive relief," and it chose that caption "to better

reflect the substance of the litigation." *In re Super Safety*, 829 F. Supp. 3d at 1372, 1374. Trademark ownership, validity, and likelihood of confusion are none of those questions.

Plaintiffs respond that §1407 transfers "civil actions," not individual claims. (Reconsideration Mot. 15.) That describes the Panel's power to transfer cases. It says nothing about whether this Court, in managing actions already transferred, should allow claims of a different kind to be added to them. Nor do the trademark counts in other Member Actions change the analysis. Plaintiffs chose to include those counts in complaints filed after this MDL was created, including complaints filed in May and June 2026. That choice does not convert a patent MDL into a trademark MDL, and it does not entitle Plaintiffs to graft the same claims onto these patent actions.

Plaintiffs say their trademark claims are already pending in at least 49 other Member Actions and that those claims "turn on the same questions in every action: whether RBTM LLC holds valid rights in the FRT® marks, and whether selling competing forced reset triggers as 'FRT' is likely to confuse buyers." (*Id.* at 15.) Taking Plaintiffs at their word, the threshold questions of ownership and protectability (including whether "FRT" is generic and thus unprotectable) will be decided in those actions. There is no need to litigate them a fiftieth and fifty-first time here.

Plaintiffs' concern about inconsistent rulings is likewise misplaced. Plaintiffs warn that, without amendment, they "must bring" new trademark actions, "likely in other districts." (*Id.*) But nothing requires Plaintiffs to file anything now. The orderly course is to let the protectability of the alleged marks be resolved in the actions where Plaintiffs have already asserted them. Any inconsistency would arise only from Plaintiffs' own choice to file parallel suits first.

Furthermore, Plaintiffs have not moved for a preliminary injunction against any of these Defendants' use of the alleged marks. Plaintiffs know how to seek expedited relief – they have

pursued preliminary injunctions on their patent claims against these very Defendants in this MDL. (*See, e.g.*, Pls.' Consol. Mot. for Prelim. Inj., MDL Dkt. #7.) They have sought nothing comparable on their alleged marks against DNT or Harrison Gunworks, which shows there is no urgency to decide those questions. Therefore, those claims can await resolution of the protectability questions elsewhere. If the Court is inclined to grant the Reconsideration Motion as to these actions, Defendants respectfully request that any trademark claims should be placed on a separate track and stayed pending resolution of the protectability of the alleged marks in the other Member Actions. *See In re Super Safety*, 829 F. Supp. 3d at 1374 (noting that the Court can employ techniques such as separate tracks to manage the MDL).

**D. <u>Without the Trademark Claims, There Is No Basis to Add RBTM LLC</u>.**

RBTM LLC's only connection to these actions is its claimed ownership of the alleged FRT marks. Plaintiffs' own heading says so: "RBTM LLC Owns the FRT® Marks, So It Is the Right Plaintiff for These Claims." (Reconsideration Mot. 13.) RBTM LLC does not own or license the Asserted Patents, which are "owned by plaintiff ABC IP and exclusively licensed by plaintiff Rare Breed Triggers." *In re Super Safety*, 829 F. Supp. 3d at 1371. Plaintiffs identify no patent right that RBTM LLC could assert.

A new plaintiff may be joined only if it asserts a "right to relief" arising out of the same transaction or occurrence. Fed. R. Civ. P. 20(a)(1)(A). Without the trademark claims, RBTM LLC asserts no right to relief at all. Adding a party with no claim would serve no purpose and would only complicate pleadings, discovery, and case management in these actions. Because the trademark claims should not be added, RBTM LLC should not be added either.

Adding RBTM LLC would be inappropriate for a further reason: its role in this litigation is of Plaintiffs' own making. ABC IP, already a plaintiff, assigned the marks to RBTM LLC on May 26, 2026 — the day before Plaintiffs moved to amend. (Reconsideration Mot. 14.) In other

words, Plaintiff ABC IP (which owned the purported marks previously) could have asserted those marks earlier. A transfer of trademark ownership on the eve of Plaintiffs' motions is not a reason to add a new party to these pending patent actions.

## IV. CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Reconsideration Motion as to the *DNT* and *Harrison Gunworks* actions and order Plaintiffs to file amended complaints that conform to the Court's September 17 orders.

Respectfully submitted,

Dated: September 30, 2026

EMERSON, THOMSON & BENNETT, LLC
*/s/ Sergey Vernyuk*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorneys for Defendants*